IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| LaSALLE BANK NATIONAL ASSOCIATION, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 06-00218-CV-W-HFS |
| DUKE & LONG HOLDING LIMITED PARTNERSHIP, et al., ) ) ) ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This ruling denies a motion to intervene (Doc. 92), filed May 21, 2007.

Litigation was filed by a creditor Bank, as trustee for bondholders, seeking foreclosure on real estate. The proposed intervenors, referred to as Operators, have been occupying the various sites, using them for service stations and convenience stores. They have no recorded interests or authorized written leases and were not joined as defendants. Their claims were first asserted by motion to intervene some months after an order authorizing the sale of the secured property was issued last November and shortly after the receiver was directed on May 9, 2007 to close the sale and to convey by deed transferring all property interests to the buyer, A.J. Partnership.

The Operators have been occupying the premises under agreements traceable to defendant Lawrence Rieke, who apparently had a long-standing management relationship, at least tacitly approved on behalf of the creditor. Although no documentary showing had been made prior to post-hearing filings, Rieke's role was somewhat clarified when he testified at argument of the motion on July 18, 2007, when called as a witness by the Operators. The Operators contend that they have

equitable rights in the real estate by reason of the alleged Rieke leases to them, with options to renew for fifteen years.[1] They acknowledge that they cannot trace authority for such leases back to the owner, which was in bankruptcy, the bankruptcy court or the Bank as secured creditor. Although their proposed complaint does not make this clear, their ultimate contention is that Rieke had a promise allowing him to purchase the premises, and as promisee could make long-term plans with the Operators. A claim of promissory estoppel is thus asserted.

In the alternative, the Operators seek to allege that they made improvements on the premises and should have a claim to the property on a theory of unjust enrichment. The proposed complaint also seeks injunctive relief, but asserts no substantive basis for relief other than that outlined above.

The motion to intervene has been fully briefed and was argued as noted, with additional citations, testimony and affidavits received at argument. Further filings were made on July 23, 2007.[2] A prompt ruling is requested because the Buyer is seeking to evict the Operators and court dates in August have been established in the ensuing litigation in state court.

\* \* \* \* \* \* \*

Intervention is governed by Federal Rule 24(b), allowing permissive joinder on timely application and when the circumstances favor intervention, as a matter of reasoned discretion, having due regard for matters of need and prejudice. The first dispute is over timeliness.

---

[1] Perhaps copies of the written leases are buried in the documentary clutter, but I remember none. I shall assume the allegations are true, for present purposes.

[2] The Bank's most recent briefing and documents present a complex background for the litigation, consistent with my ruling. I conclude, however, that a dispositive ruling on the motion can be made without use of the new material. A reply by movants is thus unnecessary.

2

Several of the Operators knew of the receivership and the proposed sale of the premises, but others apparently did not. No one gave formal notice to the occupiers of the premises that the underlying ownership was in the process of being transferred. The Operators do not establish (or claim) a legal right to be joined in the litigation or to be otherwise notified, but they ask that they be excused for delaying an assertion of their equitable interests because the court's receiver failed to contact all of them. I shall assume that at least some of the Operators were unaware of the proceedings in this court and authorized by me. It seems probable, however, that they all should have made themselves aware of who owned the property they were using and the status of the parties to whom they were paying rent. There is no assertion that they made inquiry and were misled. I will not, however, deny intervention simply because the Operators apparently slept on their rights. Lack of colorable legal merit for any claim to the real estate is more compelling.[3]

The purchaser, A.J. Partnership, would be significantly prejudiced by reopening the sale. It has paid for the property, including all interests, and is seeking to obtain control, presumably to obtain the best income available. Throwing in question ownership and the right to income would be distinctly prejudicial and unfair to the buyer.

The untimeliness of this motion is a persuasive but not conclusive factor, therefore, but will be considered in connection with the underlying weakness of the property claim of the Operators. Counsel for the Operators does not assert any legal rights to the property. The claim for unjust enrichment strikes me as somewhat dubious, but in any event would seem to support an independent damage suit against the party benefitting from the sale, apparently the Bank, representing

---

[3] The situation bristles with potential damage suits, however, on which comment would be inappropriate and premature. My ruling does not inhibit further damage suits.

bondholders. The new owner presumably paid full value for clear title and apparently should not be required to pay something additional to the Operators. My authority to create a tenancy, enforceable against the new owner, has no legal support. Damages in another case for unjust enrichment is thus conceivable but not pertinent.

The promissory estoppel argument in the proposed complaint seemed to allege, without explanation, that the Bank, as creditor of the owner, should be held responsible for a long term lease commitment to movants by Rieke or his agent. I supposed that reliance would be upon the alleged selection of Rieke as manager of the properties. Doubting that a mere manager, without specified additional authority, could offer a long-term lease binding on the Owner or the Bank, I supposed the proposed complaint deficient. At argument, however, counsel for the proposed intervenors did not pursue a contention that there was a direct promise to them by the owner, the Bank, or the bankruptcy court. Rather, with Rieke as a witness, it was contended that he had been given an option to buy the property, and that he made long-term leases in reliance on such a promise. His testimony, however, fell well short of proving an unconditional promise on which he was entitled to rely. The Rieke testimony was that there had been negotiations, at most an "agreement to agree". But the negotiations remained vague and incomplete. Rieke volunteered that no price had been established, and that there were "issues" to be clarified with the bankruptcy court.[4] If he made firm commitments to the Operators, based on a gamble that he would become owner, there was no legally

---

[4] In briefing movants appear to rely primarily on an "Assignment Terms" document dated April 4, 2002, that is not signed by a representative of the owner and does not have bankruptcy court approval or authorization. Without relying on the further developments outlined in the Bank's Supplemental Brief in Opposition to Intervention, it seems safe to conclude that the property rights in this case were not adequately settled by this document, as conceded by the Rieke testimony.

4

sound basis for the promise. Presumably the Operators might have a claim against Rieke for misrepresenting his title to the property or any expectations that went beyond simple optimism, but this would not give them rights to occupy the land.[5] I conclude that movants have no colorable claim for long-term rights to the property that would support litigation in this case.[6]

The motion for leave to intervene is therefore DENIED.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

July 25, 2007

Kansas City, Missouri

---

[5] In briefing, the Operators acknowledge that Rieke no longer seeks the land in question. This poses another problem for movants in that they offer no theory which would allow the court to rewrite leases and substitute a new lessor, which has never agreed to the terms of the leases.

[6] The Bank's latest filings tend to show a series of lost opportunities. It would be wasteful of the resources of the parties for us to engage in further litigation here as to what went wrong. The Rieke testimony itself suffices to show that there was no firm and unconditional commitment to sell, and thus no sound basis for entering into long term leases.

5